HALSBAND LAW OFFICES
Attorneys for Plaintiff
David S. Halsband, Esq.
Court Plaza South
21 Main St., East Wing
Third Floor, Suite 304
Hackensack, New Jersey 07601
T. 201.487.6249
F. 201.487.3176
Email: david@halsbandlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

CHRISTOPHER GRECO,

                     Plaintiff,

-against-

WAL-MART ASSOCIATES, INC.,

                  Defendant.
--------------------------------------------------------X

**PLAINTIFF'S COMPLAINT
DEMAND FOR JURY TRIAL**

CIVIL ACTION NO. _____

Plaintiff, by his counsel, Halsband Law Offices, alleges for his Complaint as follows:

## JURY DEMAND

1.  Plaintiff demands a trial by jury of all issues in this action.

## NATURE OF ACTION

2.  Plaintiff seeks to recover damages against Defendant, Wal-Mart Associates, Inc., (hereinafter "Defendant") for unlawful employment discrimination, harassment, and retaliation in violation of the New York State Human Rights Law, Section 290 et seq. of the Executive Law of the State of New York (hereinafter, "Executive Law").

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over Plaintiff's claims in this action based on 28 U.S.C. § 1332 and under the principles of pendent jurisdiction.

4.  Defendant is found, transacts business, has agents, and is within the jurisdiction of this Court.

5.  There is complete diversity of citizenship between the Plaintiff and the Defendant.

6.  The matter in controversy exceeds $75,000, exclusive of interests and costs.

7.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint occurred within Rockland County, New York.

## PARTIES

8.  Plaintiff is an adult male.

9.  Plaintiff resides in Passaic County, New Jersey.

10. Defendant has a principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716.

11. Defendant is incorporated in the State of Delaware.

12. Defendant employed the Plaintiff at its store in Suffern, New York.

13. Upon information and belief, Defendant is, and all times mentioned hereinafter was, a corporation authorized to do business pursuant to the laws of the State of New York.

14. Defendant is engaged in an industry affecting commerce.

15. Defendant is and has been an "employer" under the Executive Law.

16. Defendant is engaged in the business of owning and operating retails stores.

### FACTS

17. Plaintiff began his employment with the Defendant in or about 2012 at a store in Saddle Brook, New Jersey.

18. Defendant promoted the Plaintiff several times while he worked in Saddle Brook.

19. Plaintiff was transferred to the Suffern location of the Defendant in September 2016 and became an Assistant Store Manager.

20. At all relevant times, Plaintiff performed his job duties competently and satisfactorily.

21. Defendant terminated the Plaintiff's employment on February 4, 2019.

22. At all relevant times, Defendant employed Stephanie Thomas at the Suffern location as an Assistant Store Manager.

23. One day in or about July or August 2018, Plaintiff and Thomas were working together.

24. Thomas began to discuss topics of a sexual nature with the Plaintiff, including different penis sizes.

25. The Plaintiff attempted to end the conversation, but when he did, Thomas grabbed his penis with her hand and felt it on the outside of his clothes.

26. The Plaintiff was extremely shocked and offended.

27. This physical sexual assault and battery was completely unwelcomed.

28. The physical sexual assault and battery was unlawful sexual harassment.

29. The Plaintiff was stunned and did not know what to do or say, so he just left the area.

30. The Plaintiff believes that another Assistant Store Manager, named Yahir

Lamberty, witnessed the sexual assault and battery.

31. Plaintiff did not immediately report the sexual assault and battery because he was so shocked that he did not know what to do.

32. Moreover, the Plaintiff was particularly worried about making a complaint against Thomas because he knew that she had engaged in improper behavior at other times and he was worried about her retaliating against him.

33. Thereafter, on a few different occasions, Thomas told the Plaintiff that they should go into the bathroom together so she can see his penis.

34. Plaintiff was very offended by this sexual harassment.

35. On other occasion, another Assistant Store Manager told the Plaintiff to admit he is gay.

36. In response, the Plaintiff admitted that he was gay.

37. Thomas was present during this conversation.

38. Thomas then told the Plaintiff that her sexual fantasy was to have sex with a gay man.

39. Plaintiff had no interest in having sexual relations with Thomas and was offended that she would tell him her fantasy about having sex with a gay man.

40. Thomas then continued her sexual and/or sexual orientation harassment of the Plaintiff by making vulgar and highly offensive comments about gay sex to the Plaintiff.

41. On three or four different occasions, Thomas questioned the Plaintiff about him having sex with men (though her words were much more vulgar).

42. On three or four different occasions, Thomas told the Plaintiff that if he decided to have gay sex in the office to notify her in advance so that she does not walk in while he is

having gay sex.

43. On three or four different occasions, Thomas told the Plaintiff that if he decided to have gay sex in the office to make sure that the office does not "smell like ass" when he is done.

44. Plaintiff was extremely offended by this sexual orientation harassment.

45. This sexual orientation harassment was severe and pervasive.

46. On another occasion, Thomas again physically sexually assaulted and battered the Plaintiff by rubbing underneath his shirt and below his belly button toward his pubic area.

47. Plaintiff was again highly uncomfortable and offended by Thomas's sexual harassment of him.

48. Plaintiff had enough and realized he must report Thomas's sexual and/or sexual orientation harassment.

49. On or about November 12, 2018, Plaintiff reported Thomas's sexual harassment and/or sexual orientation harassment and sexual assaults and batteries to Kathy Villacis, the Defendant's Market Human Resources Manager.  However, this report was not a full elaboration at that time because Villacis told him she would report to Ethics that he wanted to make a report.

50. Plaintiff heard nothing else until December 3, 2018.

51. On December 3, 2018, Villacis and the Store Manager, Richard Leaman, held a meeting with the Plaintiff at which time Plaintiff gave them additional details about the sexual and sexual orientation harassment.

52. During this meeting, it became apparent that Villacis had spoken to others about the Plaintiff, even though Villacis had not obtained the full details of the harassment from the

Plaintiff.

53. Villacis immediately retaliated against the Plaintiff by accusing him of making Lamberty uncomfortable.

54. This was retaliation against the Plaintiff. First, Villacis had not even interviewed the Plaintiff before this meeting. Second, Plaintiff knew that Lamberty witnessed Thomas grab his penis and thus he only told Lamberty to be truthful.

55. After the December 3, 2018 meeting, Plaintiff heard nothing about the investigation.

56. It appeared that Thomas had not been disciplined for her sexual and/or sexual orientation harassment of the Plaintiff.

57. On February 4, 2019, Store Manager Leaman and a Store Manager from another store held a meeting with the Plaintiff.

58. Leaman told the Plaintiff that his sexual and/or sexual orientation harassment complaint against Thomas was unfounded and, in the same breath, he fired the Plaintiff for allegedly violating the Defendant's Retaliation and Respect-for-the-Individual policy.

59. In the Exit Interview document, Defendant wrote that Plaintiff's alleged violations of these policies "took place on multiple occasions over the last 90 days and has been document (sic) through statement (sic) and red book investigation conducted by the Market Office and Home Office."

60. Plaintiff was never coached or disciplined about such allegations.

61. Such allegations are false.

62. Such allegations are a pretext to terminating the Plaintiff in retaliation against him for objecting to the violent and highly vulgar sexual harassment and/or sexual orientation

harassment that he was subjected.

63. After the news got out that the Plaintiff was fired, Thomas posted on Facebook bragging about the Plaintiff being terminated.

64. Accordingly, Defendant and its agents sexually harassed the Plaintiff and subjected him to sexual orientation harassment in violation of the Executive Law.

65. Defendant and its agents also discriminated against the Plaintiff because of his sexual orientation by not providing him with progressive discipline for his alleged violations of the Defendant's Retaliation and Respect-for-the-Individual policy.

66. In addition, Defendant and its agents retaliated against the Plaintiff because he objected to such harassment by accusing him of violating company policy, of not affording him progressive discipline, and by terminating his employment.

67. Based on the foregoing, the Plaintiff has sustained damages.

## First Claim

## Executive Law: Sexual Harassment Against Defendant

68. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

69. By and through their course of conduct as alleged above, the Defendant and its agents willfully violated the Executive Law by sexually harassing the Plaintiff by subjecting him to a hostile work environment because of his sex.

70. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## Second Claim

## Executive Law: Sexual Orientation Harassment Against Defendant

71. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

72. By and through their course of conduct as alleged above, the Defendant and its agents willfully violated the Executive Law by harassing the Plaintiff by subjecting him to a hostile work environment because of his sexual orientation.

73. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## Third Claim

## Executive Law: Sexual Orientation Discrimination Against Defendant

74. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

75. By and through their course of conduct as alleged above, the Defendant and its agents willfully violated the Executive Law by discriminating against the Plaintiff in the terms and conditions of his employment by not affording him progressive discipline because of his sexual orientation.

76. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## Fourth Claim

## Executive Law: Retaliation Against Defendant

77. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

78. By and through their course of conduct as alleged above, the Defendant and its agents willfully violated the Executive Law by retaliating against the Plaintiff by terminating

his employment because he engaged in the legally-protected activity of reporting Thomas's sexual assault, battery and harassment of him because of his sex and sexual orientation.

79. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff prays that this Court:

(a)     accepts jurisdiction over this matter;

(b)     impanels and charges a jury with respect to the claims for relief; and

(c)     awards the following damages against Defendant:

    i.     Back pay, front pay, and all benefits along with pre and post judgment interest in amounts to determined at trial;

    ii.     Punitive, liquidated and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, physical injuries and emotional distress in order to compensate Plaintiff for the injuries suffered and to signal to other employers that discrimination in employment is repulsive to legislative enactments in amounts to be determined at trial,

    iii.     Attorney's fees, costs and expenses as provided for by the applicable statutes;

    iv.     Require Defendant to offer and, if accepted by Plaintiff, to reinstate Plaintiff to the same position from which it discriminatorily terminated Plaintiff; and,

    v.     Any other relief which this Court deems just and equitable.

Dated: Hackensack, New Jersey
      May 6, 2019

Respectfully submitted,

HALSBAND LAW OFFICES

By:                                  

David S. Halsband, Esq.
Attorneys for Plaintiff
Court Plaza South
21 Main St., East Wing
Third Floor, Suite 304
Hackensack, New Jersey 07601
T. 201.487.6249
F. 201.487.3176
Email: david@halsbandlaw.com